IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.: 1:16-cv-01712

JASON TERLIZZI and
REBECCA TERLIZZI, individually and on behalf
of all others similarly situated,

    Plaintiffs,

v.

ALTITUDE MARKETING, INC. and
GREENSKY, LLC,

    Defendants.

**DEFENDANT GREENSKY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant GreenSky, LLC f/k/a GreenSky Trade Credit, LLC ("GreenSky") moves to dismiss Plaintiffs' Class Action Complaint and Demand for Jury Trial ("Complaint"). As discussed below, Plaintiffs' claims are subject to arbitration and should, therefore, be referred to an arbitrator. In the alternative, GreenSky requests that the Court compel arbitration of Plaintiffs' individual claims.

## INTRODUCTION

Plaintiffs filed this putative class action against GreenSky (1) alleging violations of Colorado's Uniform Consumer Credit Code ("UCCC") and (2) seeking declaratory judgment under the Colorado Uniform Declaratory Judgment Act ("CUDJA"). Plaintiffs allege that they were defrauded by co-Defendant Altitude Marketing, Inc. ("Altitude") into purchasing a home solar energy system. The interest rate on the loan, made through Union Bank and Trust in

Richmond, Virginia, allegedly exceeded 12%, which purportedly required GreenSky to register in Colorado as a "supervised lender."[1] Plaintiffs seek to certify a class of all Colorado residents who allegedly procured similar loans through GreenSky.

Plaintiffs' claims against GreenSky, which arise from the document captioned "GreenSky Unsecured Installment Loan Agreement" (hereinafter the "Loan Agreement," attached as Exhibit A hereto), should be dismissed.[2] The Loan Agreement contains (1) an arbitration agreement; (2) an agreement to arbitrate all "Claims" individually; and (3) a choice of law provision requiring the application of the law of "the State where the Lender is located," which, in this case, is Virginia. Accordingly, Plaintiffs' claims against GreenSky should be dismissed for at least the following reasons: (1) pursuant to the Loan Agreement, Plaintiffs agreed to arbitrate their claims on an individual basis only; (2) Virginia law does not recognize claims under the UCCC and CUDJA; and (3) even if Colorado law were to apply, Plaintiffs' claim for declaratory relief would be governed by applicable federal procedure and not the CUDJA. Furthermore, Plaintiff Rebecca Terlizzi never signed the operative loan documents and did not purchase the solar energy system. Her claims should be dismissed on this independent basis.

For the above reasons, dismissal of Plaintiffs' claims against GreenSky is appropriate. Alternatively, if the Court does not dismiss Plaintiffs' claims, GreenSky requests that the Court enter an order compelling arbitration of Plaintiffs' individual claims and staying all proceedings against GreenSky pending the conclusion of the arbitration.

---

[1] GreenSky was only the servicer on Plaintiffs' loan and not the lender. Therefore, GreenSky did not have an obligation to register as the supervised lender.

[2] Although GreenSky is listed in the title of the Loan Agreement, the Loan Agreement expressly lists Union Bank and Trust as the "Lender."

# RELEVANT FACTUAL BACKGROUND

## I.   PLAINTIFFS' COMPLAINT

Plaintiffs allege that on June 30, 2015, an Altitude representative visited their home in an effort to sell them a solar energy system. (Complaint (Doc. 1), ¶ 40.) Plaintiffs allege that the Altitude representative assured them that they could own a solar energy system for less than they were currently paying for energy each month. (*Id.*, ¶¶ 41-42.) Among other statements, the Altitude representative allegedly made promises of rebates, tax incentives, and refinancing. (*Id.*, ¶¶ 43-47.) The Altitude representative also allegedly told Plaintiffs that the package was a "special, limited-time deal." (*Id.*, ¶ 48.) Plaintiffs agreed to purchase the package, signing a "Purchase Agreement" with Altitude. (*Id.*, ¶¶ 50-51.) Altitude allegedly failed to include a cancellation form with the agreement. (*Id.*, ¶ 52.) Altitude's representative allegedly told Plaintiffs that they had to apply for financing through Altitude. (*Id.*, ¶¶ 53-54.)

Altitude allegedly provided two documents to Plaintiffs that displayed the GreenSky logo. (*Id.*, ¶ 54.) The first document was captioned "No Interest No Payment Obligation Agreement Borrower Payment Certificate" (hereinafter the "Payment Certificate," attached hereto as Exhibit B). (*Id.*, ¶ 55.) By signing the Payment Certificate, Mr. Terlizzi expressly acknowledged receipt of the Loan Agreement and agreed "to be legally bound" by its terms. (*Id.*, Figure 5; *id.*, Figure 6.) The second document was captioned "Financing Your Energy Efficient Home Improvement Project With a GreenSky Loan" (hereinafter the "Financing Document") and related to tax credits. (*Id.*, ¶ 56.)

Plaintiffs allege that they subsequently received additional documents bearing GreenSky logos, supposedly requiring higher payments than they expected. (*Id.*, ¶¶ 60-61.) Even though

3

an earlier document encouraged the signatory to call GreenSky with any questions, Plaintiffs contacted Altitude. (*Id.*, ¶¶ 56, 62.) Altitude allegedly assured Plaintiffs that they would be able to obtain refinancing at the previously understood amount. (*Id.*, ¶ 63.) Plaintiffs canceled their order, then revoked their cancellation after an Altitude representative purportedly told them that the representative had "confirmed with the bank" that Plaintiffs' monthly payment after refinancing would be the previously understood amount. (*Id.*, ¶¶ 64-66.)

Plaintiffs allege that they are now "trapped" in a "high-interest loan arrangement" with GreenSky. (*Id.*, ¶ 70.) They purport to state claims under the UCCC and CUDJA and ask the Court to certify a class against GreenSky defined as "[a]ll Colorado residents who incurred a consumer loan for less than $75,000 that was financed through Defendant GreenSky at an annual interest rate exceeding 12% per year." (*Id.*, ¶ 72.)

## II. THE RELEVANT TERMS OF THE LOAN AGREEMENT

Plaintiffs admit that they signed the Borrower Payment Certificate, wherein they acknowledged receipt of the Loan Agreement. (*Id.*, ¶ 55.)[3] The Loan Agreement, on its first page, clearly disclosed the amount financed ($49,000.00), the finance charge for the amount financed ($46,299.68), and the total payments if Plaintiffs made all scheduled payments ($95,299.68). (Loan Agreement at 1.)[4] Furthermore, Ms. Terlizzi did not sign the Borrower

---

[3] Plaintiffs (wrongly) allege that they both are parties to the Loan Agreement containing the arbitration provision. That allegation is incorrect. Nevertheless, GreenSky will refer to "Plaintiffs" – plural – for purposes of this motion.

[4] The Loan Agreement and related documents are properly considered in assessing this 12(b)(6) motion. It is settled law in this Circuit that, "on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Here, the Loan Agreement is the *raison d'etre* for

4

Payment Certificate. The Loan Agreement contains only Mr. Terlizzi's name. (*See* Exhibit A.) Thus, Ms. Terlizzi is not a party to the Loan Agreement and the other lending documents Plaintiffs challenge in the Complaint.

### A. Arbitration Provision

The arbitration provision requires that all "Claims" between the parties be resolved through arbitration. The term "Claim" is broadly defined to mean "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky Installment Loan Agreement as well as the relationship resulting from such Agreement (the "Agreement"), including the validity, enforceability or scope of this Arbitration Provision or the Agreement." (*Id.*, ¶ 24.) Further, "Claim" "also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with the claim asserted by you or us against the other." (*Id.*)

Plaintiffs were given the ability to opt out of the arbitration provision pursuant to the following provision in the Loan Agreement:

> You may choose to opt out of and not be subject to this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration provision, then you

---

Plaintiffs' claims against GreenSky: it establishes the $49,000 loan, the interest rate charged (of which Plaintiffs complain), and the finance charge on the loan. The Loan Agreement plainly is "central" to Plaintiffs' claims here. *See, e.g., King v. Aronwitz & Mecklenberg, LLP*, 2016 WL 3078730, n.1 (D. Colo. May 31, 2016) ("The basic loan documents are central to plaintiff's claims, are cited by all parties, and their authenticity is not disputed.") (considering loan documents on defendants' 12(b)(6) motion).

5

> must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: <u>1797 Northeast Expressway, Suite 100, Atlanta, GA 30329, Attn: Opt Out</u>.

(*Id.*) (underlining original). Plaintiffs were notified in the Loan Agreement, in all capital letters, of the consequences of not opting out of the arbitration provision:

> THIS MEANS THAT, UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION (AS PROVIDED BELOW) NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.*) (capitalization original). Nevertheless, even if they did not opt out of arbitration, Plaintiffs remained able to file and pursue "your individual Claim in a small claims court in your state or municipality, so long as that Claim is pending only in that court." (*Id.*)

The arbitration is to take place in the federal judicial district where Plaintiffs reside. (*Id.*) Furthermore, regardless "of who wins in arbitration," Plaintiffs "will only be responsible for paying [their] share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that [they] would have incurred if the Claim had been brought in the appropriate state or federal court closest to where [they] live." (*Id.*) GreenSky "will pay the remainder of any arbitration fees," and also "will consider in good faith making a temporary advance of all or part of" Plaintiffs' share of the arbitration fees. (*Id.*)

  **B. Agreement To Pursue Claims Individually**

The Loan Agreement's arbitration provision also contains an agreement that the arbitration will be conducted on an individual basis only. That provision provides, in relevant

part, that "[a]rbitration will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others." (*Id.*, ¶ 24.) Furthermore, Plaintiffs agreed that the "arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties." (*Id.*)

### C. Applicable Law

The Loan Agreement also provides that "**[t]his Agreement, including the rate of interest and fees, is governed by applicable federal law and, to the extent not preempted by federal law, the laws of the State where the Lender is located as shown on the front of this document.**" (*Id.*, ¶ 16, bold type original.) The Lender for the Loan Agreement is "Union Bank and Trust, Richmond, VA." (*Id.* at 1.)

### ARGUMENT

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test 'the sufficiency of the allegations within the four corners of the complaint.'" *FirsTier Bank, Kimball, Neb. v. F.D.I.C.*, 935 F. Supp. 2d 1109, 1115 (D. Colo. 2013) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)). "A complaint will survive such a motion only if it contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the context of a Rule 12(b)(6) motion, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports LLC*

*v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009). Analyzed under those standards, Plaintiffs' claims against GreenSky should be dismissed.

I. **PLAINTIFFS' CLAIMS AGAINST GREENSKY SHOULD BE ORDERED TO ARBITRATION PURSUANT TO THE LOAN AGREEMENT.**

    A. **The Federal Arbitration Act Promotes Liberal Construction Of Arbitration Agreements, With All Doubts Resolved In Favor Of Arbitration.**

The Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another under a written agreement for arbitration may petition any United States district court … for an order directing that arbitration proceed in the manner provided for in such agreement."[5] The primary purpose of the FAA is to "ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1285 (D. Colo. 2011) (quoting *Concepcion*, 563 U.S. at 339). The FAA mandates "rigorous" enforcement of arbitration agreements. *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013).

For over two decades, court after court in this Circuit has held that "we must interpret arbitration clauses liberally, and all doubts must be resolved in favor or arbitration." *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 798 (10th Cir. 1995); *see also Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1145-46 (10th Cir. 2014); *Norgren, Inc. v. Ningbo Prance Long, Inc.*, 2015 WL 5562183, *7 (D. Colo. Sept. 22, 2015); *Cook v. PenSa, Inc.*, 2014 WL 3809409,

---

[5] The Loan Agreement states that the arbitration provision "is made pursuant to a transaction involving interstate commerce, and will be governed by the Federal Arbitration Act" as a result. (Loan Agreement, ¶ 24.)

*7 (D. Colo. Aug. 1, 2014); *Vernon v. Qwest Comms. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1142 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013); *Daugherty v. Encana Oil & Gas (USA) Inc.*, 2011 WL 2791338, *3 (D. Colo. July 15, 2011). Accordingly, "[d]istrict courts must defer to arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Richardson v. Citigroup, Inc.*, 2012 WL 3590899, *1 (D. Colo. July 25, 2012) (quoting *United Steelworkers of Am. v. Gulf & Warrior Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Thus, "when a contract contains an arbitration clause, there is a presumption in favor or arbitrability." *Local 5-857 Paper, Allied-Ind., Chem. And Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003); *Cook*, 2014 WL 3809409, *13. Furthermore, when a valid arbitration clause exists, a court does not have subject matter jurisdiction "until the dispute has been submitted to arbitration." *Roddy v. Rosewood Res., Inc.*, 2013 WL 3713915, *5 (D. Colo. July 16, 2013) (internal citation and quotations omitted).

### B. The Two-Part Test For Enforcement Of The Loan Agreement's Arbitration Provision Is Satisfied Here.

Where the Court finds that (1) a valid arbitration agreement exists; and (2) the arbitration agreement covers the parties' dispute, the case should be arbitrated. *See Elliott v. Essex Motors, LLC*, 2013 WL 1117211, *1 (D. Colo. Mar. 18, 2013); *accord, American Family Mut. Ins. Co. v. Tamko Building Prods.*, __ F. Supp. 3d __, 2016 WL 1460322, *2 (D. Colo. Apr. 13, 2016); *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1107-08 (D. Colo. 1999). Both elements are satisfied here.