IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01712

**JASON TERLIZZI** and **REBECCA TERLIZZI**, individually and on behalf of all others similarly situated

    Plaintiffs,

v.

**ALTITUDE MARKETING, INC.,** d/b/a 1 800 Solar USA, a Colorado corporation,

    Defendant

---

**DEFENDANT ALTITUDE MARKETING, INC.'S MOTION TO DISMISS THE COMPLAINT IN FAVOR OF ARBITRATION PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

**INTRODUCTION**

Plaintiffs admittedly signed GreenSky's loan documents when they purchased a residential solar energy system. The loan documents at the dead-center of Plaintiffs' claims, titled "GreenSky Unsecured Installment Loan Agreement" (the "Loan Agreement," attached hereto as Ex. A), contain: (1) a broad arbitration agreement encompassing claims against Altitude and GreenSky alike, including an agreement to arbitrate "the validity, enforceability or scope of this Arbitration Provision"; and (2) an agreement to arbitrate all "Claims" individually and not in a representative capacity on behalf of others. The Loan Agreement very clearly states that any questions regarding the arbitrability of any of Plaintiffs' claims are within the purview of the arbitrator.

Despite this broad and unambiguous contractual provision, Plaintiff purports to bring claims against Altitude and GreenSky for violations of the Colorado Uniform Commercial Credit Code ("UCCC") and for a declaration judgment and seeks to certify two separate classes. The

unambiguous and conspicuous terms of the Loan Agreements—which mirror similar provisions that have recently and repeatedly been upheld by courts in the Tenth Circuit and the United States Supreme Court—bar Plaintiffs from bringing their claims in this forum. Accordingly, the Court should dismiss Plaintiffs' claims against Altitude and compel arbitration of Plaintiffs' individual claims. Alternatively, the Court should dismiss Plaintiffs' claims because Altitude is not a "creditor" within the meaning of the UCCC and thus the statute that forms the basis for Plaintiffs' claims does not apply to Altitude.[1]

## STATEMENT OF ALLEGED FACTS

### I.  PLAINTIFFS' COMPLAINT

Plaintiffs allege that GreenSky is engaged in a nationwide home-solicitation and loan-generation scheme. (Compl. (ECF No. 1) ¶ 16.) They claim GreenSky does not operate alone, but instead "partners" with local merchants who call on consumers and sell them expensive products that serve as the impetus for GreenSky's loans. (*Id.* ¶¶ 16, 20.) GreenSky allegedly collects brokerage and servicing fees for these loans while other entities act as the lender. (*Id.*) Plaintiffs allege that Altitude is one of GreenSky's partners. (*Id.* ¶ 20.)

On June 30, 2015, an Altitude representative allegedly visited Plaintiffs' home in an effort to sell them a solar energy system. (*Id.* ¶ 40.) Plaintiffs agreed to purchase the solar energy system, signing a "Purchase Agreement" with Altitude. (*Id.* ¶¶ 50-51.) Altitude allegedly provided two documents to Plaintiffs that displayed the GreenSky logo. (*Id.* ¶ 54.) The first

---

[1] Undersigned counsel conferred with Plaintiffs' counsel during a telephone conference on September 6, 2016 about the specific relief Altitude seeks here, including whether there are steps Plaintiffs could or should take to address the deficiencies in the Complaint raised herein. (*See* Practice Standards § III.D.) This communication came after similar, prior discussions between Plaintiffs' counsel and Altitude's corporate counsel as well. The parties were unable to agree on any steps that could fix the deficiencies in the Complaint and Plaintiffs oppose this motion.

document was captioned "No Interest No Payment Obligation Agreement Borrower Payment Certificate" (the "Payment Certificate," attached hereto as Exhibit B). (*Id.* ¶ 55.) By signing the Payment Certificate, the Terlizzis expressly acknowledged receipt of the Loan Agreement (attached hereto as Exhibit A) and agreed "to be legally bound" by its terms. (*Id.*, Fig. 5; *id.*, Fig. 6.)[2] They also received a document titled "Financing Your Energy Efficient Home Improvement Project With a GreenSky Loan" (the "Financing Document") where they further agreed to repay their loan and that they read and understood the entire Loan Agreement. (*Id.* ¶ 56 & Fig. 7.)

Plaintiffs allege that they subsequently received additional documents bearing GreenSky logos, supposedly requiring higher payments than they expected. (*Id.* ¶¶ 60-61.) Altitude allegedly assured Plaintiffs that they would be able to obtain refinancing at the previously understood amount. (*Id.* ¶ 63.) Plaintiffs tried to cancel their agreement and then revoked their cancellation after an Altitude representative purportedly told them their monthly payment after refinancing would be the previously understood amount. (*Id.* ¶¶ 64-66.) Plaintiffs allege that they are now "trapped" in a "high-interest loan arrangement" with GreenSky. (*Id.* ¶ 70.)

## II.    THE RELEVANT TERMS OF THE LOAN AGREEMENT

Plaintiffs admit that they signed the Borrower Payment Certificate, where they acknowledged receipt of the Loan Agreement. (*Id.* ¶ 55.) The Loan Agreement, on its first page, clearly disclosed the amount financed, the annual percentage rate, the finance charge for the amount financed, and the total payments. (Ex. A, Loan Agreement at 1.)

---

[2] "[O]n a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).  Here, the Loan Agreement is referenced in the Complaint throughout (e.g. ¶¶ 2, 3, 55-60, 67, 80) and is central to Plaintiffs' claims. *See, e.g.*, *King v. Aronwitz & Mecklenberg, LLP*, No. 14-cv-00897-RBJ, 2016 WL 3078730, n.1 (D. Colo. May 31, 2016).

### A. The Arbitration Provision Requires Arbitration of Plaintiffs' Claims

The arbitration provision requires that all "Claims" between the parties be resolved through arbitration. (Ex. A ¶ 24.) The term "Claim" is broadly defined to include both the merits of any dispute and, expressly, the question of arbitrability: "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky Installment Loan Agreement as well as the relationship resulting from such Agreement (the "Agreement"), including the validity, enforceability or scope of this Arbitration Provision or the Agreement." (*Id.*)

Moreover, "Claim" "also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with the claim asserted by you or us against the other." (*Id.*) "[U]s" and "you" "also includes . . . all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement." (*Id.*)

Plaintiffs were allowed to opt out of the arbitration provision:

> You may choose to opt out of and not be subject to this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement...

(*Id.*) Plaintiffs were notified in the Loan Agreement, in all capital letters, of the consequences of not opting out of the arbitration provision:

> THIS MEANS THAT, UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION (AS PROVIDED BELOW) NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN

>   ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR
>   ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.*) Nevertheless, even if they did not opt out of arbitration, Plaintiffs could still file and pursue "[their] individual Claim in a small claims court in your state or municipality..." (*Id.*)

Any arbitration must take place in the federal judicial district where Plaintiffs reside. (*Id.*) Regardless "of who wins in arbitration," Plaintiffs "will only be responsible for paying [their] share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that [they] would have incurred if the Claim had been brought in the appropriate state or federal court closest to where [they] live." (*Id.*) Defendants "will pay the remainder of any arbitration fees," and also "will consider in good faith making a temporary advance of all or part of [Plaintiffs'] share of the arbitration fees." (*Id.*)

### B. The Loan Agreement Requires Plaintiffs to Pursue Claims Individually

The Loan Agreement requires that the arbitration be conducted on an individual basis. It states "[a]rbitration will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others." (*Id.*) Further, Plaintiffs agreed that the "arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties." (*Id.*)

### ARGUMENT

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test 'the sufficiency of the allegations within the four corners of the complaint.'" *FirsTier Bank, Kimball, Neb. v. F.D.I.C.*, 935 F. Supp. 2d 1109, 1115 (D. Colo. 2013) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)). "A complaint will survive such a motion only if it contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The inquiry in a Rule 12(b)(6) motion "is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).

I.  **PLAINTIFFS' CLAIMS AGAINST ALTITUDE SHOULD BE DISMISSED IN FAVOR OF ARBITRATION, INCLUDING ANY DISPUTE AS TO ARBITRABILITY**

   A.  **The Loan Agreement's Arbitration Agreement Is Valid**

Plaintiffs allege that they signed the Payment Certificate on June 30, 2015, and received "two more documents" the next day reflecting a monthly payment of $1,134.52. (Compl. ¶¶ 56, 61.) The Payment Certificate stated that, by signing, the "Borrower" (*i.e.*, Plaintiffs) acknowledged receipt of the Loan Agreement and agreed "to be legally bound by the TERMS AND CONDITIONS of the Agreement." (Exhibit B (capitalization in original).) One of the two documents Plaintiffs received was the Loan Agreement, which contained the arbitration agreement to which Plaintiffs agreed in the Payment Certificate. Although they tried to cancel the loan, they admittedly revoked the cancellation and "accepted the solar energy system." (Compl. ¶¶ 64, 66.) This acceptance took place <u>after</u> Plaintiffs received the Loan Agreement, the document that they claim informed them of potential monthly payments of $1,134.52. (*Id.* ¶¶ 58, 60, 65, 66.) At a minimum, Plaintiffs assented to the arbitration agreement at that time.[3]

Moreover, Plaintiffs' entire case is premised on the existence of the Loan Agreement. Plaintiffs allege that "they are now trapped into a high-interest loan arrangement with GreenSky" (*id.* ¶ 70), and seek declaratory relief to determine that it is unenforceable. (*Id.* ¶ 91.)

---

[3] Plaintiffs may argue they never agreed to the arbitration or other provisions in the Loan Agreement. As described below, however, a ruling on that question is squarely in the purview of the arbitrator. (*See infra* at 8, 9.)

In short, there is an enforceable arbitration agreement in this case because Plaintiffs assented to the arbitration provision in the Loan Agreement. *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1150 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (evidence of assent to a contract may "be gleaned from the totality of the circumstances.").

### B.  Plaintiffs Did Not Opt Out Of the Arbitration Agreement

Plaintiffs did not opt out of the arbitration agreement. Plaintiffs received the Loan Agreement, including the arbitration provision, on July 1, 2015. (*See* Loan Agreement at 1.) It provided for a 45-day opt out. (*Id.* at 3.) Therefore, Plaintiffs had until September 15, 2015 to opt out, but did not.

Under these circumstances, Plaintiffs' assent can be "gleaned from the totality of the circumstances." *See Vernon*, 857 F. Supp. 2d at 1148, 1150; *see also Am. Family Mut. Ins. Co. v. Tamko Bldg. Prods.*, __ F. Supp. 3d __, 2016 WL 1460322, *2 (D. Colo. Apr. 13, 2016) (holding that a valid arbitration agreement existed through constructive notice where arbitration agreement was affixed to a bundle of shingles that was opened by a contractor). Plaintiffs' failure to opt out further evidences their assent to the arbitration agreement.

### C.  Disputes with Altitude Are Covered By the Arbitration Agreement

A "Claim" subject to arbitration under the Loan Agreement is defined as disputes and controversies "between you and us arising from or relating to your GreenSky Installment Loan Agreement . . . ." (Loan Agreement ¶ 24.) The agreement broadly defines the terms "you" and "us" to include "<u>any third party providing any product, service or benefit in connection with the Agreement</u>." (*Id.* (emphasis added).)

Altitude plainly meets this definition because Plaintiffs allege that Altitude partnered with and provided door-to-door marketing services in connection with the solar energy system sale and related loan transaction. (Compl. ¶ 20.) Further, a "Claim" under the arbitration

provision also includes "claims by or against any third party providing any product, service or benefit in connection with the Agreement . . . if and only if, such third party is named as a co-party with you or us . . . in connection with a claim asserted by you or us against the other." (Loan Agreement ¶ 24.) Altitude meets this definition as well: it provided products, services, and benefits in connection with the Loan Agreement and has been named as a co-party with GreenSky in Plaintiffs' case. (*See, e.g.*, Compl. ¶¶ 20, 40-56.)

> D.       The Parties Agreed to Arbitrate Threshold Questions of Arbitrability

Parties may agree that an arbitrator, rather than a court, resolve gateway issues of arbitrability so long as the evidence is "clear and unmistakable" that they did so. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). The "most 'clear and unmistakable' agreement to arbitrate the issue of arbitrability would be an express statement to that effect in the parties' contractual agreement to arbitrate . . . ." *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 968 (10th Cir. 2001), *rev'd on other grounds*, 537 U.S. 70 (2002); *see also Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623, 624 (8th Cir. 2006) (provision stating that "[a]ny controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s)" was clear and unmistakable); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (arbitration provision including phrase "or the validity or application of any of the provisions of this Section 4" deemed clear and unmistakable); *Seahorn v. JC Penney Corp., Inc.*, No. 12-CV-2617-CM, 2013 WL 452793, at *1 (D. Kan. Feb. 6, 2013) (finding the following language clear and unmistakable: "[a]ny dispute concerning this Agreement—the way it was formed, its applicability, what it means, its enforceability, or any claim that all or part of this Agreement is void or voidable—is subject to arbitration under this Agreement."). Even less explicit wording is sufficient. *See Pikes Peak Nephrology Assocs. v. Total Renal Care, Inc.*, No. 09-cv-00928-CMA-

MEH, 2010 WL 1348326, at *7 (D. Colo. Mar. 30, 2010) (agreement that arbitrator would decide arbitrability evidenced by incorporation of AAA rules providing for such jurisdiction).

Here, the arbitration agreement contains clear and unmistakable evidence that the parties agreed to arbitrate threshold questions of arbitrability because they expressly agreed to arbitrate "the validity, enforceability or scope" of the arbitration provision. (Loan Agreement ¶ 24.) The Court should thus dismiss this case in favor of arbitration of both the merits of the parties' dispute and any matters concerning the validity, enforceability, or scope of the arbitration provision. Alternatively, the Court should compel arbitration and stay this case while the arbitration is pending.[4]

## II. ALTERNATIVELY, THE COURT SHOULD DETERMINE THAT THE PARTIES' DISPUTE IS SUBJECT TO ARBITRATION

### A. The Federal Arbitration Act Promotes Liberal Construction of Arbitration Agreements, With All Doubts Resolved In Favor Of Arbitration

The Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another under a written agreement for arbitration may petition any United States district court . . . for an order directing that arbitration proceed in the manner provided for in such agreement."[5] The primary purpose of the FAA is to "ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The FAA reflects "both a liberal federal policy favoring

---

[4] This Court recently recognized that "the majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable." *Am. Family*, 2016 WL 1460322, *5 (dismissing action where all claims were arbitrable and the "movant specifically request[ed] dismissal rather than a stay") (citations omitted). All of Plaintiffs' claims are arbitrable and, thus, Altitude requests dismissal rather than a stay. The Court is, however, permitted to issue a stay instead. *Vernon*, 925 F. Supp. 2d at 1196.

[5] The Loan Agreement states that the arbitration provision "is made pursuant to a transaction involving interstate commerce, and will be governed by the Federal Arbitration Act" as a result. (Loan Agreement ¶ 24.)

arbitration and the fundamental principle that arbitration is a matter of contract." *Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1285 (D. Colo. 2011) (quoting *Concepcion*, 563 U.S. at 339). The FAA mandates "rigorous" enforcement of arbitration agreements. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).

For over two decades, courts in this Circuit have held that "we must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration." *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995); *see also Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145-46 (10th Cir. 2014); *Norgren, Inc. v. Ningbo Prance Long, Inc.*, No. 14-cv-03070-CBS, 2015 WL 5562183, *7 (D. Colo. Sept. 22, 2015); *Cook v. PenSa, Inc.*, No. 13-cv-03282-RM-KMT, 2014 WL 3809409, *7 (D. Colo. Aug. 1, 2014); *Vernon*, 857 F. Supp. 2d at 1142; *Daugherty v. Encana Oil & Gas (USA) Inc.*, No. 10-cv-02272-WJM-KLM, 2011 WL 2791338, *3 (D. Colo. July 15, 2011). Accordingly, "[d]istrict courts must defer to arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Richardson v. Citigroup, Inc.*, No. 12-cv-00486-WJM-KMT, 2012 WL 3590899, *1 (D. Colo. July 25, 2012) (quotations omitted). Thus, "when a contract contains an arbitration clause, there is a presumption in favor of arbitrability . . . ." *Local 5-857 Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003); *Cook*, 2014 WL 3809409, *13.

### B. The Two-Part Test for Enforcement of the Loan Agreement's Arbitration Provision Is Satisfied Here

Where the Court finds that (1) a valid arbitration agreement exists; and (2) the arbitration agreement covers the parties' dispute, the case should be arbitrated. *See Elliott v. Essex Motors, LLC*, No. 12-cv-01078-REB-KLM, 2013 WL 1117211, *1 (D. Colo. Mar. 18, 2013); *accord,*

*Am. Family*, 2016 WL 1460322 at *2; *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1107-08 (D. Colo. 1999). Both elements are satisfied here.

### 1. There is a valid arbitration agreement

As explained above, Plaintiffs assented to the arbitration provision and did not opt out. Thus, there is a valid arbitration agreement between all parties hereto.

### 2. The broad arbitration agreement covers Plaintiffs' claims

In this Circuit, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Daugherty*, 2011 WL 2791338, *5 (quoting *Cummings v. Fedex Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)). Applying that analysis here, the Court should conclude that the arbitration provision clearly encompasses Plaintiffs' claims against Altitude.

#### a. The arbitration provision should be classified as "broad"

The arbitration provision in the Loan Agreement is "broad" for purposes of the required analysis. The arbitration provision requires the arbitration of <u>all</u> "Claims . . . that arise between you and us." (Loan Agreement ¶ 24.) In turn, "Claims" is broadly defined as "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky Installment Loan Agreement as well as the relationship resulting from such Agreement . . . , including the validity, enforceability or scope of this Arbitration Provision or the Agreement." (*Id*.) "Claim" also is defined to include "claims by or against any third party providing any product, service or benefit in connection with the Agreement" if that third party "is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a claim asserted by you or us against the other." (*Id.*) Numerous courts in this Circuit, including this Court, have held similar provisions are "broad,"

11

particularly where, as here, the arbitration agreement contains such phrases as "arising under," "relating to," or "any claim, dispute or controversy." *See St. Charles v. Sherman & Howard L.L.C.*, No. 14-cv-03416-RM-CBS, 2015 WL 1887758, *3 (D. Colo. Apr. 24, 2015) ("The Tenth Circuit has consistently held that the phrases 'arising out of or relating to' mean that the parties intended their arbitration agreement to be construed broadly.") (citing several cases); *see also Sanchez*, 762 F.3d at 1146-47 (language requiring arbitration of "[a]ny dispute, difference or unresolved question" between parties "is broad"); *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (language of "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" deemed "broad"); *Cook*, 2014 WL 3809409, *13-14 ("arising under" language held to require a "broad construction"); *Viaero Wireless v. Nokia Sols. Network U.S. LLC*, No. 13-cv-00866-RM-CBS, 2013 WL 5366402, *5 (D. Colo. Sept. 25, 2013) ("any dispute under this Agreement" held "broad", thus "the presumption in favor of arbitration extends to peripheral matters relating to the parties' obligations"); *Daugherty*, 2011 WL 2791338, *5 ("any dispute arising out of or related to this agreement" held "broad"); *Lougee v. Ad Astra Recovery Servs., Inc.*, No. 09-cv-02423-REB-MJW, 2010 WL 2077178, *1 (D. Colo. May 24, 2010) (similar definition of term "Claim" "plainly encompasses the claims sought to be prosecuted against defendant in this lawsuit"); *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163 (D. Colo. 2001) (language of "any and all claims, demands, causes of action, disputes, controversies, and other matters in question arising out of or relating to this Agreement" is "undoubtedly a broad arbitration clause"). Thus, a broad construction of the arbitration clause is warranted here.

      **b.**  **Plaintiffs' claims fall within the arbitration provision**

Plaintiffs' claims against Altitude clearly fall within the scope of the broad arbitration provision. First, Plaintiffs' UCCC claim plainly "aris[es] from or relat[es] to" the parties'

relationship "resulting from" the Loan Agreement. (Loan Agreement ¶ 24.) Similar state-based statutory claims have been held to fall within a broad arbitration clause. *See, e.g, Cook*, 2014 WL 3809409, * 15 (claim alleging "violations of the Colorado Securities Act" fell within the "broad arbitration clause"); *Elliott*, 2013 WL 1 1 17211, *1 (CCPA claims ordered to arbitration).

Likewise, Plaintiffs' declaratory judgment claim is arbitrable. That claim falls squarely within "any dispute or controversy whether based in law or equity" language of the Loan Agreement. Indeed, this Court has ordered arbitration on claims seeking a declaratory judgment. *See Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, 78 F. Supp. 3d 1363, 1375 (D. Colo. 2015), *appeal dismissed*, 641 F. App'x 988 (Fed. Cir. 2016) (finding declaratory judgment claim arbitrable). Consequently, both of Plaintiffs' claims against Altitude should be dismissed in favor of arbitration. Alternatively, the Court should compel arbitration and stay the case while the arbitration is pending.

### 3. The Court should compel individual arbitration for Plaintiffs' claims

Under the FAA, arbitration agreements under which the parties agree to pursue claims only individually and not as a part of a class action are enforceable. *See generally Concepcion*, 563 U.S. at 348-52. In cases decided both before and after *Concepcion*, this Court consistently has enforced arbitration agreements in which the parties agreed to arbitrate their disputes on an individual basis only. *See, e.g., Hickey v. Brinker Int'l Payroll Co. L.P.*, No. 1:13-cv-00951-REB-BNB, 2014 WL 622883, *5 (D. Colo. Feb. 18, 2014) ("The motion to compel arbitration of the individual claims thus should be granted, as should the motion to dismiss the putative class and collective action claims."); *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1083 n.11 (D. Colo. 2013) ("I further agree that the arbitration agreement contemplates that [plaintiff's] claims must be arbitrated on an individual, not a class-wide, basis."); *Vernon*, 857 F. Supp. 2d at 1157 ("While Plaintiffs are precluded from pursuing relief on a class-wide basis, that

limitation does not establish substantive unconscionability."); *Bernal*, 793 F. Supp. 2d at 1288 (upholding individual-arbitration-only provision); *Ornelas v. Sonic-Denver T, Inc.*, No. 06-cv-00253-PSF-MJW, 2007 WL 274738, *5 (D. Colo. Jan. 29, 2007) ("a consumer agreement's prohibition on participation in a class action, or class arbitration proceedings, does not render the agreement unenforceable") *see also Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005) (same).

In this case, Plaintiffs agreed in the Loan Agreement that "Arbitration will proceed solely on an individual basis" for any "Claims." (Loan Agreement ¶ 24.) Therefore, the Court should order that Plaintiffs' claims against Altitude be arbitrated on an individual basis only.

### III. PLAINTIFFS FAIL TO PLEAD THAT ALTITUDE IS A "CREDITOR" UNDER THE UCCC

Even if the Court determines this case should not be arbitrated, it should still dismiss Plaintiffs' claims pursuant to Rule 12(b)(6). Plaintiffs' first cause of action seeks penalties up to three times the amount of the finance charge and attorney fees under UCCC sections 5-5-201(1) and (7). (Compl. ¶ 86.) These provisions of the UCCC apply only to violations by a "creditor" as defined by the UCCC. *See* section 5-5-201(1), C.R.S. (2016) ("If a creditor has violated the provisions of this code . . ."); section 5-5-201(7), C.R.S. (2016) ("In any case in which it is found that a creditor has violated this code . . ."). Similarly, Plaintiffs' claims for declaratory relief depend upon Altitude's status as a "creditor." For example, Plaintiffs allege that their loans are unenforceable because they were issued in contravention of the law. (*See* Compl. ¶ 91.)

Plaintiffs, however, fail to plead that Altitude is a "creditor" under the UCCC. In fact, Plaintiffs do not even raise the idea that Altitude is a "creditor" until paragraph 81 of the Complaint. There, Plaintiffs baldly conclude, parroting the language of the statute without distinguishing between the Defendants, that "Defendants are sellers or lenders or are persons

who make or arrange consumer credit transactions having annual interest rates in excess of 12% and to whom such transactions are initially payable." (Compl. ¶ 81.) The Complaint contains no facts supporting this bare allegation. In particular, the Complaint fails to allege facts showing Altitude is the lender or the entity to whom the Terlizzi's credit transaction debt is initially payable. Rather, Plaintiffs claim Altitude is just a "door to door" marketer. (*Id.* ¶ 20.)

Thus, in the alternative to compelling arbitration, the Court should dismiss Plaintiffs' claims against Altitude for failure to state a claim upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (in resolving motion to dismiss for failure to state a claim, court must disregard "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .").

## CONCLUSION

The Court should dismiss Plaintiffs' claims against Altitude.

Dated:  September  6, 2016                           Respectfully submitted,


                                                    *s/ Joel Neckers*
                                                    Joel Neckers
                                                    Andrew W. Myers
                                                    Wheeler Trigg O'Donnell LLP
                                                    370 Seventeenth Street, Suite 4500
                                                    Denver, CO  80202-5647
                                                    Telephone:  303.244.1800
                                                    Facsimile:  303.244.1879
                                                    Email:    neckers@wtotrial.com
                                                              myers@wtotrial.com

                                                    *Attorneys for Defendant Altitude Marketing, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 6, 2016. Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ M. Hope Watkins*