**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO.: 1:16-cv-01712-WJM-MJW

JASON TERLIZZI and REBECCA
TERLIZZI, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

ALTITUDE MARKETING, INC., and
GREENSKY, LLC,

Defendants.

---

**REPLY IN FURTHER SUPPORT OF DEFENDANT GREENSKY, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

---

Defendant GreenSky, LLC f/k/a GreenSky Trade Credit, LLC ("GreenSky"), submits this Reply in Further Support of its Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings. Plaintiffs' complaint against GreenSky should be dismissed or stayed in favor of arbitration.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS, INCLUDING CHALLENGES TO THE ARBITRATION AGREEMENT, SHOULD BE REFERRED TO ARBITRATION.

Plaintiffs challenge virtually all aspects of their arbitration agreement with GreenSky, notwithstanding the now-undisputed fact that they failed to opt out of that agreement despite clear and conspicuous notice that they could do so. Their challenges should be resolved by the arbitrator, and if the Court addresses them they should be rejected anyway.

### A.  The Arbitration Rules And The Delegation Provision Direct That The Arbitrator Resolve Plaintiffs' Challenges To The Arbitration Agreement.

The arbitrator, not the Court, should resolve Plaintiffs' challenges to the arbitration agreement, for two reasons.  First, the agreement's "delegation provision" specifically delegates to the arbitrator the responsibility to resolve the issues Plaintiffs challenge in the agreement. Second, even if the delegation provision did not apply, the agreement's directive on applying rules of an applicable arbitration organization would require the same result.

### 1.  The Delegation Provision Specifically Directs The Arbitrator To Resolve Threshold Issues Such As Validity And Enforcement.

The Supreme Court has described a delegation provision as "an agreement to arbitrate threshold issues concerning the arbitration agreement.  We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *see also Getzelman v. Trustwave Holdings, Inc.*, 2014 WL 3809736, *4 (D. Colo. Aug. 1, 2014) (quoting *Rent-A-Center*).  The delegation provision in the arbitration agreement specifically directs the arbitrator to resolve the "threshold issues" Plaintiffs assert here.  The agreement requires Plaintiffs and GreenSky to submit any "Claim" to arbitration, specifically including "the validity, enforceability or scope of this Arbitration Provision of the [loan] Agreement."  (Loan Agmt. (Doc. 13, Ex. A), ¶ 24.)

Clearly, the arbitration agreement requires the arbitrator to decide threshold issues of "the validity, enforceability or scope" of the agreement – exactly the issues Plaintiffs challenge here. *See Rent-A-Center*, 561 U.S. at 71-72 (upholding delegation provision that gave arbitrator "exclusive authority to resolve any dispute relating to the … enforceability … of this

2

Agreement"). Courts in this Circuit have followed *Rent-A-Center*. *See, e.g., Chen v. Dillard's Inc.*, 2012 WL 4127958, *1, *3 (D. Kan. Sept. 19, 2012) (enforcing delegation provision that required "[a]ny dispute" concerning the agreement, including "its applicability, meaning, [and] enforceability," to be "subject to arbitration"); *Spears v. Mid-America Waffles, Inc.*, 2012 WL 2568157, *2 (D. Kan. July 2, 2012) (enforcing delegation provision pursuant to which "[p]laintiffs agreed to submit questions of interpretation and enforceability to the arbitrator").[1]

Under *Rent-A-Center*, "unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . ." 561 U.S. at 72. Therefore, in that case, "the Supreme Court stayed the litigation and compelled arbitration." *Chen*, 2012 WL 4127958, *2. Similarly, in this case, Plaintiffs do not challenge the delegation provision specifically – they make it clear that they contest the validity of the arbitration agreement as a whole. (Doc. 40 at 5.) Accordingly, *Rent-A-Center* directs that the arbitrator decide Plaintiffs' enforceability challenges. *See Spears*, 2012 WL 2568157, *1 (observing that where the "*Rent-A-Center* plaintiff did not specifically

---

[1] Plaintiffs' reliance on *Grosvenor v. Quest Comms. Int'l, Inc.*, 2010 WL 3906253 (D. Colo. Sept. 30, 2010), is misplaced. In *Grosvenor*, the Court considered an arbitration provision that was "much more general" than others it reviewed and determined that the Court should determine whether a valid arbitration clause existed because "[the subject arbitration provision] does not specify that an arbitrator is to determine the issues of arbitrability." *Id.*, *7. By comparison, the Court explained that arbitration provisions that "clearly and unmistakably give the arbitrator exclusive authority to decide whether the agreement is enforceable" – exactly the circumstances here – would be valid and require determination of the gateway issue by the arbitrator. *Id.*, *5. Similarly, Plaintiffs' reliance on *Vescent, Inc. v. Prosun Intern, LLC*, 2010 WL 4658862, *4 (D. Colo. Nov. 9, 2010), is misplaced because in that case, unlike here, the arbitration provision at issue was vague, did not contain a delegation provision, and "was silent as to the scope of the arbitration." Similarly, Plaintiffs' reliance on *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002), misses the mark because that case does not reflect the existence of a delegation provision in the arbitration agreement; the court instead held that the arbitration provision was invalid because the defendant had the ability to unilaterally modify it.

challenge the validity of the delegation provision itself," the court "must treat it as valid and let the arbitrator decide any challenge to the validity of the agreement as a whole").

### 2. The Arbitration Agreement's Reference To Arbitration Rules Also Supports The Delegation Of Threshold Questions To The Arbitrator.

Also supporting the delegation of threshold issues to the arbitrator is the arbitration agreement's reference to the rules of JAMS and the American Arbitration Association ("AAA"). The agreement states that any "Claim will be resolved … by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed." (Doc. 13, Ex. A, ¶ 24.) The "national arbitration organization" to be selected is either JAMS or the AAA. (*Id.*) The AAA's Consumer Arbitration Rules expressly state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arb. Ass'n, *Consumer Arbitration Rules*, R-14. The JAMS rules provide likewise: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *JAMS Comprehensive Arb. Rules & Procedures*, Rule 11(b).

Courts consistently hold that an arbitration agreement's express incorporation of JAMS or AAA rules evinces the parties' agreement to have the arbitrator decide the types of gateway issues that Plaintiffs raise here. "Indeed, this Court and others  . . . have found that by including this additional language the parties 'clearly and unmistakably' agreed to be bound by

arbitration." *Getzelman*, 2014 WL 3809736, *3 (where agreement required arbitration to be conducted under AAA rules, Court held that "by incorporating the AAA rules and agreeing to be bound by these rules, the parties 'clearly and unmistakably' evidenced their intent to arbitrate all matters, including the question of arbitrability"); *see also Am. Family Mut. Ins. Co. v. Tamko Building Prods.*, __ F. Supp. 3d __, 2016 WL 1460322, *5 (D. Colo. Apr. 13, 2016) (where arbitration agreement required proceeding to be conducted under JAMS rules, Court quoted JAMS Rule 11(b) and held that "matters going to the scope of the arbitration clause are not for this court, but for the arbitrator"); *Viaero Wireless v. Nokia Sols. Network U.S.*, 2013 WL 5366402, *5 (D. Colo. Sept. 25, 2013) ("I find that because the parties incorporated the AAA rules into their 2003 Agreements, they have clearly and unmistakably provided an arbitrator with the authority to determine whether this dispute is within the scope of the arbitration agreement."); *Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care, Inc.*, 2010 WL 1348326, *7 (D. Colo. Mar. 30, 2010) ("[W]hen they incorporated, by reference, then-existing AAA Rules … the parties acquiesced to the arbitrator's jurisdiction on matters of arbitrability or scope."); *Chen*, 2012 WL 4127958, n.1 ("The incorporation of these [AAA] rules is additional clear and unmistakable evidence that the parties intended for the arbitrator to decide threshold issues of arbitrability.") (citing, *inter alia*, *Qwest Corp. v. New Access Comms. LLC*, 2004 U.S. Dist. LEXIS 28523, *20-33 (D. Colo. Mar. 31, 2004), as holding that "the parties' agreement to arbitrate under the AAA rules is a clear and unmistakable agreement to arbitrate questions of arbitrability"). *See generally P&P Ind., Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir.

1999) ("[b]y agreeing to arbitrate before the AAA, … P&P and Sutter impliedly agreed that they would be bound, in the course of arbitration proceedings, by the procedural rules of the AAA").[2]

In this case, the arbitration agreement specifically requires the parties to arbitrate under the rules of JAMS or the AAA, which grant power to the arbitrator to determine the issues Plaintiffs raise here.  Accordingly, the arbitrator, not this Court, should decide those issues.

### B. Even If The Court Addresses Plaintiffs' Challenges To The Arbitration Agreement, Those Challenges Should Be Rejected.

Even if the Court were to address Plaintiffs' challenges to the arbitration agreement, it should reject those challenges.  The facts and law refute Plaintiffs' claims of unconscionability and lack of mutual assent.

### 1.   Plaintiffs Received And Assented To The Arbitration Agreement.

In their Response, Plaintiffs admit that they received and signed documents containing the arbitration-related information.  First, on June 30, 2015, they received the GreenSky Borrower Certificate, which expressly provided that Plaintiffs "[a]cknowledge receipt of the GreenSky Installment Loan Agreement … with the Lender specified on the Agreement, and agree to be legally bound by the TERMS AND CONDITIONS of the Agreement." (Doc. 40 at 3; Doc. 40-1, ¶¶ 6, 9; Doc. 40-2, ¶¶ 6, 9.)

Second, the very next day (July 1, 2015), Plaintiffs concede that they received the Loan Agreement, but deny that it contained the TERMS AND CONDITIONS with the arbitration agreement.  (Doc. 40 at 3; Doc. 40-1, ¶ 12; Doc. 40-2, ¶ 12.)  The Loan Agreement contained the

---

[2] As the Court recently noted, "[t]his same result has been reached by all the federal circuit courts to have considered the issue." *Am. Family*, __ F. Supp. 3d at __, 2016 WL 1460322, *8 (citing cases); *see also Hedrick v. BNC Nat'l Bank*, __ F. Supp. 3d __, 2016 WL 2848920, *5 (D. Kan. May 16, 2016).

following language at the bottom of the page that Plaintiffs admit they received (and that Mr. Terlizzi signed): "TERMS AND CONDITIONS CONTINUE ON NEXT PAGE."  Plaintiffs also admit that they received the GreenSky Shopping Pass, which expressly provided "Use of this Shopping Pass or the associated installment Loan by (any Borrower)…to make a purchase constitutes acceptance by (all) Borrower(s) of the terms of the [Loan Agreement]."  (Doc. 40 at 3; Doc. 40-7 at 4-5.)

GreenSky sent Mr. Terlizzi several documents on July 1, 2015:  (1) Welcome Letter (*see* Declaration of Mark Hammerstrom, attached hereto as Exhibit 1, ¶ 2); (2) the GreenSky Shopping Pass (*id.*); and (3) the Loan Agreement, including the Terms and Conditions with the arbitration agreement.  (*Id.*)  In the Welcome Letter, GreenSky advised Mr. Terlizzi that "[y]our loan agreement is included with this packet and contains the full terms and conditions of your loan" and "Use of the Shopping Pass or the associated Installment Loan to make a purchase constitutes acceptance of the terms of the loan."  (*Id.*, ¶ 3.)

After GreenSky provided these documents to Mr. Terlizzi, he made the following payments on the loan:  September 12, 2015 ($600); November 26, 2015 ($200); February 25, 2016 ($200); and May 20, 2016 ($100).  (*Id.*, ¶ 8.)  Thus, even under Plaintiffs' view of the facts, they received a signed copy of the Loan Agreement on July 1, 2015, that made reference to the "TERMS AND CONDITIONS CONTINUE[D] ON NEXT PAGE" and had a copy of those Terms and Conditions, with the arbitration provision, in hand "[s]ometime after July 1, 2015." (Doc. 40 at 3.)  Given GreenSky's testimony that it sent the documents, with the arbitration provision, by mail on July 1, 2015, Plaintiffs' ambiguous "sometime after July 1, 2015"

admission was likely by at least July 6, 2015 and unquestionably before Plaintiffs made the payments described above between September 2015 and May 2016.

Plaintiffs' use of the loan, after they admittedly received the Loan Agreement with the arbitration provision, is conclusive evidence of their assent to the arbitration provision. *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 477-78 (10th Cir. 2006) (finding, upon applying "classic contract principles," that when a contract provided that certain behavior manifested assent to an agreement containing an arbitration provision, and the party performed the behavior, such behavior constituted assent to be bound by the arbitration provision). Plaintiffs "lack of assent" argument should be rejected.[3]

### 2. Plaintiffs Have Failed To Demonstrate That The Arbitration Provision Is Either Procedurally Or Substantively Unconscionable.

Even if the Court considers Plaintiffs' unconscionability argument, it should reject that argument.[4] Plaintiffs argue that the arbitration agreement fails the factors articulated in *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986), (Doc. 40 at 13-16) but those factors are no longer sufficient in isolation and must now be viewed in light of the Supreme Court's directive favoring arbitration clauses. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). As such, the *Davis* factors must, to a large extent, yield to the Supreme Court's overriding directive in *Concepcion* that the Federal Arbitration Act's presumption in favor of arbitration be applied.

---

[3] Plaintiffs' argument that there was no valid agreement because they did not sign it lacks merit. Under Colorado law, a valid arbitration agreement can exist even if it is not signed. *See E-21 Engineering, Inc. v. Steve Stock & Associates, Inc.*, 252 P.3d 36, 39 (Colo. 2010) ("the lack of a signature in and of itself does not invalidate an otherwise enforceable agreement to arbitrate").

[4] *See Getzelman*, 2014 WL 3809736, *5 ("[B]ecause Plaintiff failed to challenge the delegation clause, the arbitrator, not this Court, must construe Plaintiffs claim of unconscionability.") (citing *Rent-A-Center*).

*Id.* at 344.  Specifically, the Supreme Court "held a state may not apply its own law on contract interpretation and formation—including unconscionability—in a manner that interferes with the Federal Arbitration Act's presumption in favor of arbitration."  *Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011) (citing *Concepcion*); *see also Daugherty v. Encana Oil & Gas (USA)*, 2011 WL 2791338, *9 (D. Colo. July 15, 2011) (same).

*Concepcion* affirmed the public policy in favor of upholding arbitration agreements and raised the burden for a finding of unconscionability under the *Davis* factors.  Indeed, in *Bernal*, this Court found an arbitration provision valid under *Davis* when viewed in light of *Concepcion*, although it might not have done so "if it were issuing this decision pre-*Concepcion.*"  *Bernal*, 793 F. Supp. at 1287.  Chiefly, assertions that a contract is essentially an adhesion contract or preclude a class action are no longer sufficient to invalidate an arbitration provision, as the "Court is bound by [*Concepcion*] and, therefore, cannot be persuaded in this case by the fact that ordering the parties to arbitration may impact Plaintiffs' ability to recover."  *Id.* at 1287-88.

Furthermore, when the plaintiffs in *Bernal* had the "ability to cancel the contracts and receive a substantial refund" and there was a "competitive market" for the product at issue, the facts suggested that the relevant terms were "substantively fair."  *Id.* at 1288.  The Court found significant that the "circumstances in which [the agreements] were signed does not appear to have been any more coercive than is common in a typical adhesion contract."  *Id.*  The Court ruled that the arbitration agreement in that case was not unconscionable and should be enforced.  *Id.*

Here, Plaintiffs' assertions that they lacked the ability to negotiate and that GreenSky enjoyed an unfair bargaining advantage do not meet the standard set by *Concepcion* to invalidate

an arbitration clause.  *See Bernal*, 793 F. Supp. 2d at 1287-88 (holding that alleged unfair bargaining advantage does not render arbitration provision unconscionable).   Similarly, regarding the contract as a whole, Plaintiffs had a significant period of time to consider whether they wanted to cancel the contract, as evidenced by the fact that they actually did cancel, before withdrawing their cancellation.  (*See* Doc. 40-1, ¶ 13; Doc. 40-2, ¶ 13.)  Thus, Plaintiffs cannot plausibly argue that they were under "significant external pressure driving them to sign the documents without taking time to review them."  *Bernal*, 793 F. Supp. 2d at 1288.  They "had the ability to cancel the contracts" and in the case of the cancellation of the Agreement as a whole, "receive a substantial refund."  *Id.*

Nor does Plaintiffs' assertion that they possessed "no bargaining power" (*see* Doc. 40 at 14)  support a finding of unconscionability, as courts within this District have held that when the selling party's services are "not essential," then that party does "not enjoy an unfair bargaining advantage."  *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 475 (D. Colo. 1992) (exculpatory agreement was "fairly entered into" and was "not an adhesion contract"); *see also Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 294 (D. Colo. 1993) (citing *Bauer* and holding that the offered services were "not essential and, therefore, [the offering party] did not enjoy an unfair bargaining advantage.").

Plaintiffs' arguments that the arbitration clause was unconscionable are not legally supported.   Accordingly, "Plaintiffs have not sustained [their] burden" of showing unconscionability and the Court should enforce the arbitration agreement.  *Vernon v. Qwest Comms Int'l, Inc.*, 857 F. Supp. 2d 1135, 1157 (D. Colo. 2012); *see also Daugherty*, 2011 WL

2791338, *9 (arbitration provision not unconscionable after reviewing the *Davis* factors in light of *Concepcion*'s "clear message").

## II.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED ON OTHER GROUNDS.

Of course, if the Court refers Plaintiffs' claims against GreenSky to arbitration, the arbitrator will resolve Plaintiffs' individual claims after addressing Plaintiffs' threshold challenges.  Nevertheless, those claims should be dismissed even if the Court retains the case.

First, Plaintiffs argue that they did not see the choice of law provision, but "even if [they] had," the UCCC would invalidate the agreement because it provided for the application of Virginia, not Colorado, law.  (Doc. 40 at 17.)    Regardless, as discussed above, the application of this provision of Colorado law should be for the arbitrator to decide.  *See Valley Decking Co. v. Local Union No. 9 of Sheet Metal Workers Int'l Ass'n*, 841 F. Supp. 354, 357 (D. Colo. 1994) (holding that parties, through an arbitration clause, have wide discretion to grant broad authority to an arbitrator to decide questions related to the claims).

Second, the "third-party beneficiary" argument fails.  In Colorado, "parties to a contract must intend to create third-party beneficiaries, and the best evidence of their intent is the contract itself."  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014).  The Loan Agreement was intended to provide funds to the applicant only.  Here, there is no ambiguity in the Loan Agreement.  The Agreement begins by stating "Congratulations, JASON!" and goes on to state "you" throughout the Agreement.  Only Mr. Terlizzi signed the documents.  (Doc. 40-7 at 4-6.)  A loan is intended to benefit the named applicant, who receives the funds, either directly or indirectly, and here, although there are two spaces for "Borrower Signature," only Mr. Terlizzi signed this document.  (*Id.* at 5-6.)  As such, only Mr. Terlizzi is

responsible for the GreenSky loan.  The GreenSky loan, therefore, concerns only Mr. Terlizzi, and does not intend to benefit any other individual.  *See Gorsuch*, 771 F.3d at 1238.

Third, Plaintiffs' claim for declaratory relief fails.  When a declaratory judgment action is brought in a case in federal court under diversity jurisdiction, as here, "federal law *will be applied* and *will control* whether or not the court can render a declaratory judgment . . . ."  *Ins. Co. of the State of Pa. v. Hanover Ins. Co.*, 2014 WL 1515551, *1 (D. Colo. Apr. 18, 2014) (emphasis added).  The caselaw specifically provides that in a diversity case, the Federal Declaratory Judgment Act must control the decision of whether a federal district issues a declaratory judgment.  28 U.S.C. § 2201(a); *Ins. Co.*, 2014 WL 1515551, *2; *Addison Ins. Co. v. Maynard*, 2008 WL 2079143, *2 (D. Colo. May 15, 2008).[5]

Finally, Plaintiffs argue that GreenSky is a "creditor" under the UCCC because it "brokers and services" loans and "receives payments, and has authority to stop billing if there is a loan dispute."  (Doc. 40 at 21.)  Plaintiffs' reliance upon *State ex rel. Salazar v. The Cash Now Store, Inc.*, 31 P.3d 161 (Colo. 2001), is misplaced.  In *Cash Now*, the court considered a company that advanced money to taxpayers in exchange for the right to collect payment from the government in the amount of the consumer's tax refund.  31 P.3d at 167.  The court also found that the company "effectively charges a financing fee for its transactions by discounting the face value of the anticipated refund by 50-60%."  *Id.*  In this case, GreenSky is a loan servicer.  It did not fund the loan to Plaintiffs.  Unlike the defendant in *Cash Now*, it did not advance Plaintiffs

---

[5] Plaintiffs' cited cases, in contrast, do not specify that they are exercising declaratory judgment jurisdiction under the Colorado Uniform Declaratory Judgment Act ("CUDJA"), but rather, simply consider whether a claim for declaratory judgment is "cognizable" under CUDJA.  *See Curtis v. Brown*, 2007 WL 2590452, *7 (D. Colo. Sept. 4, 2007); *Morally v. Marabella Partners, LLC*, 2006 WL 2038388, *4 (D. Colo. July 19, 2006).  They do not support the proposition that a district court sitting in diversity may choose to grant declaratory relief under the CUDJA.

any money with the expectation of repayment.   Accordingly, Plaintiffs' UCCC claims against

GreenSky should be dismissed.

## **CONCLUSION**

GreenSky requests that its Motion to Dismiss or Stay be granted.

DATED: October 21, 2016.

*/s/  Barry Goheen*
Barry Goheen
J. Anthony Love
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA  30309-3521
Phone: (404) 572-4600
Fax: (404) 572-5139
bgoheen@kslaw.com
tlove@kslaw.com

***Attorneys for Defendant GreenSky Trade
Credit*, *LLC***

## <u>CERTIFICATE OF SERVICE  (CM/ECF)</u>

This is to certify that I have this day served a true and correct copy of the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following counsel of record:

| | |
|---|---|
| Benjamin H. Richman | Joel Neckers |
| Courtney C. Booth | Andrew W. Myers |
| Edelson, PC-Chicago | Wheeler Trigg O'Donnell LLP |
| 350 N. LaSalle Street, Suite 1300 | 370 Seventeenth Street, Suite 4500 |
| Chicago, IL  60654-7582 | Denver, CO  80202-5647 |
| | |
| Rafey S. Balabanian | *Attorney for Defendant Altitude Marketing, Inc.* |
| Edelson PC-San Francisco | |
| 329 Bryant Street | |
| San Francisco, CA  94107 | |

*Attorneys for Plaintiff*

DATED:  October 21, 2016.


/s/  *Barry Goheen*
Barry Goheen