**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01712-WJM-STV

**JASON TERLIZZI** and **REBECCA TERLIZZI**, individually and on behalf of all others similarly situated

        Plaintiffs,

v.

**ALTITUDE MARKETING, INC.,** d/b/a 1 800 Solar USA, a Colorado corporation, and **GREENSKY, LLC**, a Georgia limited liability company,

        Defendants.

---

**ALTITUDE MARKETING, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN FAVOR OF ARBITRATION**

---

## INTRODUCTION

Plaintiffs' primary basis for attempting to avoid arbitration is based on two declarations that, on their best day, are willfully incomplete and misleading. Contrary to Plaintiffs' declarations, the undisputed facts demonstrate that Plaintiffs possessed the Terms and Conditions pages of the Loan Agreement—that contain the arbitration provision—before they signed a document expressly acknowledging receipt of the Terms and Conditions and agreeing to be bound by those terms and before using the loan to pay for the solar energy system they purchased from Altitude.

Because the undisputed evidence establishes a binding agreement to arbitrate, the Court need not address Plaintiffs' remaining objections. That is because the agreement broadly requires arbitration of all disputes involving the validity, enforceability or scope of the arbitration provision, including Plaintiffs' contentions that Altitude cannot

enforce the provision and that enforcement of the provision would be unconscionable. Finally, even if the Court looks past the arbitration provision here, Plaintiffs' claims still fail under Rule 12 because Plaintiffs' opposition fails to demonstrate any plausible allegation that Altitude lent Plaintiffs money or was the initial (or ever for that matter) payee on the Terlizzis' debt—as the statute expressly requires.

## ARGUMENT

### I.  ARBITRATION IS APPROPRIATE REGARDLESS OF WHAT LEGAL STANDARD THE COURT APPLIES

Plaintiffs ask this Court to apply something resembling the "standard at summary judgment" and suggest that "[a] court should only compel arbitration 'if there is no genuine issue of fact concerning the formation of the agreement to arbitrate.'" (Pls.' Opp'n, ECF No. 40, at 4 (citations omitted).) Any debate over what standard applies is a tempest in a teapot. Arbitration of this dispute is appropriate even under the standard Plaintiffs advocate because even accepting their incomplete and misleading declarations as true, there is no dispute they agreed to arbitrate their claims.

### II.  PLAINTIFFS UNDENIABLY ASSENTED TO THE ARBITRATION PROVISION

Plaintiffs first argue that the Court should not compel arbitration because, based on their declarations (which omit a material part of the story), they never agreed to arbitrate. (*See* Pls.' Opp'n at 5-11.) This argument is based on the demonstrably false premise that Plaintiffs did not see the arbitration provision contained in the Terms and Conditions pages of the Loan Agreement before purchasing and financing their solar energy system. (*See* Pls.' Opp'n at 7.)

Notwithstanding Plaintiffs' misleadingly incomplete declarations, the undisputed evidence establishes that Plaintiffs (1) knew about the arbitration provision when they signed the Loan Agreement; (2) received a paper copy of the Terms and Conditions containing the arbitration provision within days after signing the Loan Agreement for the first time; (3) <u>after</u> receiving the Terms and Conditions in the mail, signed yet another Borrower Payment Certificate expressly representing that they had received and would be legally bound by the Terms and Conditions; and (4) <u>after</u> receiving the Terms and Conditions in the mail, made payments on the loan. These facts establish that the Terlizzis agreed to arbitrate their claims.

**A.      Plaintiffs Knew About the Arbitration Provision From the Day They Signed the Loan Agreement; Received the Arbitration Agreement Several Days Later; and then Signed Another Document in Which They Agreed to Be Bound By the Terms and Conditions**

Plaintiffs' opposition is based on the false claim that they did not see the Terms and Conditions before signing documents in which they agreed to those terms. Specifically, Plaintiffs falsely claim:

• Not only did [Plaintiffs] never see the Terms before signing their contracts, but they had no way of obtaining them beforehand. (Pls.' Opp'n at 6-7.)

• None of the essential terms of an arbitration agreement were provided to, let alone agreed to by, Plaintiffs when they signed their contracts with Defendants. (*Id.* at 10.)

• Plaintiffs were never provided with an opportunity to view the Terms, did not have access to (or knowledge of) them, were not informed that additional terms

would be incorporated, and did not agree to a future agreement of terms. (*Id.* at 11.)

The following undisputed timeline shows, however, that even if those portions of Plaintiffs' declarations are true, their claims still must be arbitrated.

On June 30, 2015, an Altitude representative met with Plaintiffs at their home. Plaintiffs expressed interest in purchasing and financing a solar energy system, and signed several documents related to the purchase and loan transaction. (Decl. of Jason Terlizzi ("J. Terlizzi Decl."), ECF No. 40-1, ¶¶ 2-7.)

On July 1, 2015, Altitude emailed several additional documents to the Terlizzis, including the GreenSky Unsecured Installment Loan Agreement ("Loan Agreement"). (*Id.* ¶¶ 8-11.) The front page of the Loan Agreement, which Plaintiffs admit they saw prior to signing, provides in capitalized letters that: "5. THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT, UNLESS YOU REJECT IT, MAY LIMIT YOUR RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM." (Altitude's Mot. to Dismiss ("Mot.") Ex. A, ECF No. 23-1, at 1.) The front page of the Loan Agreement further provides, in capitalized and bolded letters conspicuously contained in a standalone text box: "TERMS AND CONDITIONS CONTINUE ON NEXT PAGE." (*Id.*) Plaintiffs electronically signed the Loan Agreement for the first time that same day. (J. Terlizzi Decl. ¶ 12.)

GreenSky mailed a package of hardcopy loan documents (nine pages in total) to the Terlizzis' home that same day. (GreenSky Reply, Decl. of Mark Hammerstrom ¶ 2.) The Terlizzis admit receiving the package of documents, admit that the package

<u>contained the Terms and Conditions which included the arbitration provision</u>, and <u>admit to seeing the arbitration provision</u>. (J. Terlizzi Decl. ¶¶ 15-16.) Despite identifying the exact date they received and signed every other relevant piece of paper related to the sale and loan transactions, Plaintiffs strategically fail to state what date they received the hard copy Terms and Conditions in the mail. (*Id.*)[1] The cover letter for the mailing provides that "[y]our loan agreement is included with this packet and contains the full terms and conditions of your loan." (Pls.' Opp'n Ex. H at 1.) The letter further provides that "[w]hen you agree to the terms of the Loan Agreement and are ready to make your purchase, give your account number, expiration date, and photo ID to your contractor. Use of the Shopping Pass or associated Installment Loan to make a purchase constitutes acceptance of the terms of the loan." (*Id.*)

After Plaintiffs received the hard copy Loan Agreement with Terms and Conditions, Altitude commenced the installation of the Terlizzis' solar energy system. As part of that process, Plaintiffs used the loan proceeds to pay for the system. (*See* Exhibit A, Decl. of Kacey Manson ("Manson Decl."), ¶¶ 3-4.) With the first and last installment payments, Altitude required Jason Terlizzi to sign the GreenSky "No Interest No Payment Obligation Agreement Borrower Payment Certificate" ("Borrower Payment Certificate") in order to instruct and acknowledge the release of the installment payments from the lender to Altitude. (*Id.* ¶ 4.)

---

[1] "There is a rebuttable presumption that a letter which was properly addressed, stamped and mailed was duly delivered to the addressee." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012) (quoting *Campbell v. IBM Corp.*, 867 P.2d 77, 80 (Colo. App. 1993).

On September 2, 2015, in connection with the final loan installment, and approximately two months after admittedly receiving the Terms and Conditions, Mr. Terlizzi signed the Borrower Payment Certificate for a second time. (Manson Decl. Ex. A.) By signing it, Mr. Terlizzi again "[a]cknowledge[d] receipt of the GreenSky Installment Loan Agreement ("Agreement") with the Lender specified on the Agreement, and agree[d] to be legally bound by the TERMS AND CONDITIONS of the Agreement." Thus, even accepting Mr. Terlizzi's claim in his declaration as true that he did not see the arbitration provision until sometime in early July 2015, <u>as of September 2, 2015, Mr. Terlizzi undisputedly assented to the arbitration provision in the Terms and Conditions</u>.

Finally, the Terlizzis made at least four monthly payments on the loan after receiving and seeing the Terms and Conditions, further acknowledging their assent to those provisions. (Hammerstrom Decl. ¶ 8.)

The following table summarizes the key events establishing the Terlizzis' assent:

| Date | Event | Citation |
|------|-------|----------|
| July 1, 2015 | Jason Terlizzi electronically signs Loan Agreement informing him of the existence of the Terms and Conditions and arbitration provision. | J. Terlizzi Decl. ¶ 12; Decl. of Rebecca Terlizzi ("R. Terlizzi Decl."), ECF No. 40-2, ¶ 12. |
| July 1, 2015 | GreenSky mails to the Terlizzis a hard copy of Terms and Condition. | Hammerstrom Decl. ¶ 4. |
| Early July, 2015 | The Terlizzis received and became aware of the arbitration agreement in the Loan Agreements. | J.Terlizzi Decl. ¶ 16; R. Terlizzi Decl. ¶ 16. |
| July and August 2015 | The Terlizzis use the proceeds of the loan to fund the purchase and | Manson Decl., Ex. A ¶ 4. |

| Date | Event | Citation |
|------|-------|----------|
| | installment of their solar energy system. | |
| September 2, 2015 | Jason Terlizzi acknowledges final loan disbursement by electronically signing Borrower Payment Certificate, expressly acknowledging receipt of, and agreement with, Terms and Conditions. | Manson Decl., Ex. A ¶ 4. |
| Various Dates in 2015/2016 | Terlizzis make payments on loan. | Hammerstrom Decl. ¶ 8. |

**B.     The Undisputed Facts Establish Plaintiffs' Consent to Arbitrate**

Even accepting the Terlizzis' declaration statements at face value, the above-referenced facts disprove Plaintiffs' arguments because they establish that Plaintiffs received and viewed a copy of the Terms and Conditions before signing another agreement pledging to be bound by its terms. With the premise of Plaintiffs' opposition disproved, the contractual analysis is straightforward.

"In order to establish the existence of a contract, the evidence must show that the parties agreed upon all essential terms." *I.M.A. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). "The parties' agreement is evidenced by their manifestations of mutual assent." *Id.* (citing Restatement (Second) of Contracts § 17(1) (1981)). Assent "may be implied from the totality of circumstances and the acts of the parties." *Vernon*, 857 F. Supp. 2d at 1149. These elements are easily satisfied here.

Plaintiffs do not dispute receiving the Terms and Conditions that GreenSky mailed on July 1, 2015, thus Plaintiffs were aware, or are charged with knowledge, of the arbitration provision when they paid for their solar energy system with the loan

proceeds and signed the Borrower Payment Certificate for the second time on

September 2, 2015. *See Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470,

1473-74 (10th Cir. 1995) (party is bound by provisions in a services agreement despite

not reading the contract). Indeed, the Borrower Payment Certificate evidences Plaintiffs'

receipt of and assent to the Terms and Conditions. And as Plaintiffs themselves admit,

a form agreement is part of a contract where the plaintiff was aware of the agreement

and assented to it. (*See* Pls.' Opp'n at 8-9 (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526

U.S. 629, 640 (1999).); *see also Vernon*, 857 F. Supp. 2d at 1150-51 (compelling

arbitration where plaintiffs alleged they were never presented with terms and conditions

because plaintiffs "were made aware of the Subscriber Agreement through multiple

communications"); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal.

2002) (holding that an arbitration agreement was enforceable even though customer

received the contract after purchasing the necessary equipment).

That is precisely what happened here. Therefore, none of the cases Plaintiffs cite

or any of their arguments save their claims because none of them stand for the

proposition that a party can admittedly receive an arbitration provision, agree for a

second time after receiving that provision to be bound by that provision, accept all of the

benefits under the contract (Plaintiffs have a working solar system after all), and then

somehow ignore that provision.

## III.   THE COURT SHOULD COMPEL ARBITRATION

After determining there is a binding agreement to arbitrate, the Court should

defer all of Plaintiffs' other objections to the arbitrator. As explained in Altitude's Motion,

parties may agree that an arbitrator, rather than a court, resolve gateway issues of arbitrability if the evidence is "clear and unmistakable" that they did so. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). The "most 'clear and unmistakable' agreement to arbitrate the issue of arbitrability would be an express statement to that effect in the parties' contractual agreement to arbitrate . . . ." *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 968 (10th Cir. 2001), *rev'd on other grounds*, 537 U.S. 70 (2002). Here, the parties did that: "any claim, dispute or controversy of every kind . . . including the validity, enforceability or scope of this Arbitration Provision or the Agreement" shall be arbitrated. (*See* Loan Agreement ¶ 24.)

## A.   The Arbitration Provision Covers Claims Against Altitude, But That is a Question for the Arbitrator to Resolve

Plaintiffs contend that Altitude cannot enforce the arbitration provision because it is not a party to the Loan Agreement. (Pls.' Opp'n at 12.) Under Colorado law, however, non-parties to an arbitration provision "may fall within the scope of an arbitration agreement and may bring an action on such contract if that is the intent of the parties." *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1992); *see also O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 901 (10th Cir. 1992) (if a nonsignatory to an arbitration agreement is a third-party beneficiary then it is able to enforce the agreement). The intent to benefit a third party must be apparent from the terms of the agreement, the surrounding circumstances, or both. *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. App. 2002). As explained in Altitude's Motion, the arbitration provision includes Altitude within its scope by, among other things, requiring arbitration with "any

third party providing any product, service or benefit in connection with the Agreement."
(Loan Agreement ¶ 24.) Plaintiffs do not dispute that. (*See* Pls.' Opp'n at 12.)

This issue, however, is for the arbitrator to decide because it concerns "the scope
of this Arbitration Provision" (Loan Agreement ¶ 24), which is one of the many types of
disputes that the parties agreed to arbitrate. *See Getzelman v. Trustwave Holdings Inc.*,
No. 13-cv-02987-CMA-KMT, 2014 WL 3809736, at *3 (D. Colo. Aug. 1, 2014) (AAA
Rules incorporated into an arbitration provision providing that the arbitrator shall have
the power to rule on "any objections with respect to the existence, scope, or validity of
the arbitration agreement[]" was clear and unmistakable evidence that the parties
agreed to arbitrate dispute over scope of arbitration provision); *Viaero Wireless v. Nokia
Sols. Network U.S. LLC, No.*, No. 13-cv-00866-RM-CBS, 2013 WL 5366402, at *5 (D.
Colo. Sept. 25, 2013) (referring dispute over scope of arbitration to arbitrator because
parties incorporated AAA rules, which provide the arbitrator with the authority to
determine whether a dispute is within the scope of the arbitration agreement).

**B.    The Arbitration Provision is Not Unconscionable, But That Too is a
Question for the Arbitrator**

Plaintiffs also claim that the arbitration provision is unconscionable. (*See* Pls.'
Opp'n at 13.) This argument willfully ignores the fact that Plaintiffs had the right to
"reject" or "opt out" of the arbitration provision, as the Loan Agreement expressly
provided both on the front page and in the Terms and Conditions. (Loan Agreement at 1
& ¶ 24.) Plaintiffs admit that they saw the arbitration provision in the Terms and
Conditions after GreenSky mailed it to them (J. Terlizzi Decl. ¶ 16, R. Terlizzi Decl.
¶ 16), but Plaintiffs did not opt out.

Instead, Plaintiffs decided to accept the solar system, signed more documents in September 2015 and agreed to be bound by the arbitration provision, and made payments to GreenSky. (*See supra* at 5-6.) Thus, even accepting Plaintiffs' statements in their declarations as true, the material fact Plaintiffs omit from their declarations—i.e. that they signed more documents agreeing to arbitrate two months after receiving the Loan Agreement—show there is nothing unconscionable about enforcing the arbitration provision here. *See Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1372 (D. Colo. 2014) (refusing to find arbitration provision procedurally unconscionable where party had 30-day window to opt out); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (agreement providing party with opportunity to opt out is not unconscionable).

Further, contrary to Plaintiffs' assertion, the arbitration provision treats Plaintiffs entirely fairly and is therefore by no means substantively unconscionable. (Pls.' Opp'n at 16.) It provides that, regardless of who prevails in the arbitration, <u>Plaintiffs will be responsible only for the amount of arbitration fees that do not exceed the cost of filing fees in this Court</u>, and that Defendants will pay the rest. (Loan Agreement ¶ 24.) The agreement further provides that the Defendants will consider in good faith whether to temporarily advance the Plaintiffs' small share of fees. (*Id.*) Plaintiffs will thus not be disadvantaged in the pursuit of their claims through arbitration.

In any event, because the parties agreed to arbitrate issues of the "validity" and "enforceability" of the arbitration provision, the question of unconscionability is one for the arbitrator to decide. *Getzelman*, 2014 WL 3809736, at *3-5 (agreement to arbitrate "validity" of arbitration provision includes matters of unconscionability). Further,

Plaintiffs' arguments of unconscionability go to the Loan Agreement Terms and Conditions as a whole, rather than the agreement to arbitrate threshold arbitrability issues specifically. (*See* Pls.' Opp'n at 13-16 (arguing unconscionability based on contract of adhesion, unequal bargaining power, lack of opportunity to read Terms and Conditions, lack of assent, and pressure to consummate purchase and loan transaction).) Under these circumstances, the Court should enforce the parties' agreement to arbitrate unconscionability. *See Getzelman*, 2014 WL 3809736, at *4 (where party made unconscionability challenge based on lack of bargaining power, not receiving copy of agreement, inability to seek legal counsel, and pressure to sign—and not specifically based on unconscionability of delegating validity disputes to arbitration— the issue was for the arbitrator to resolve) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-73 (2010)).

## IV.   ALTERNATIVELY, PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THAT ALTITUDE IS A CREDITOR WITHIN THE MEANING OF THE UCCC

Altitude's Motion shows that Plaintiffs failed to plead Altitude is a creditor under the UCCC because Plaintiffs do not plausibly allege Altitude is a lender or entity to whom the Terlizzis' loan debt is initially payable. (Mot. at 13-14.) Plaintiffs ignore this.

Indeed, Plaintiffs do not argue Altitude is the lender or entity to whom the Terlizzis' loan debt was initially payable, as the statute requires. *See* C.R.S. § 5-1-301(17). Instead, Plaintiffs cite to federal decisions that have interpreted the federal Consumer Credit Protection Act—an entirely different statute—to include persons who "arrange for" credit as creditors. (*See* Pls.' Opp'n at 21.) Plaintiffs fail to tell the Court, however, that those decisions interpret a prior version of the statute that defined

persons who "arrange for" credit as creditors, and that the statute was amended in 1982 and no longer uses that definition. *See Robey-Harcourt v. Bencorp Fin. Co., Inc.*, 212 F. Supp. 2d 1332, 1334 (W.D. Okla. 2002) (current version of the statute does not define an "arranger of credit" as a "creditor"). Plaintiffs' argument thus fails.

Further, in each of the Colorado UCCC decisions Plaintiffs cite, the defendant "creditor" was either a lender or the entity to whom the debt was initially payable—just as the statute requires. *See State ex rel. Salazar v. The Cash Now Store, Inc.*, 31 P.3d 161, 166 (Colo. 2001) (defendant loaned money in exchange for assignment of rights to receive tax refunds; in the event refunds were less than anticipated, "the individual may be required to pay Cash Now for the deficiency"); *De La Rosa v. W. Funding, Inc.*, 24 P.3d 637, 638-39 (Colo. App. 2001) (dealership assigned its rights under promissory note to defendant, who "collected all of the payments due"). Plaintiffs do not, because they cannot, plausibly allege Altitude falls into either category. And neither case stands for the proposition that a Court may ignore the express requirement of the UCCC that a creditor be the lender or person to whom the debt is initially payable.

Accordingly, the Court should dismiss Plaintiffs' claims against Altitude for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

## <u>CONCLUSION</u>

The Court should dismiss Plaintiffs' claims in favor of arbitration or, in the alternative, pursuant to Rule 12(b)(6).

Dated: October 21, 2016

Respectfully submitted,

*s/ Joel Neckers*
Joel Neckers
Andrew W. Myers
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:   neckers@wtotrial.com
            awmyers@wtotrial.com

*Attorneys for Defendant Altitude Marketing, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 21st, 2016. Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ M. Hope Watkins*